LAW OFFICE OF ROBERT A. CARICHOFF
Robert A. Carichoff (SBN 211066)
1024 Iron Point Road
Folsom, California 95630
Telephone: (916) 357-6622
Facsimile: (916) 673-9426

Attorney for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANHEUSER-BUSCH COMPANIES, LLC, a Delaware limited liability company, and ANHEUSER-BUSCH, LLC, a Missouri limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES ALAN CLARK,<br><br>Defendant. | Case No.: 2:13-CV-00415-GEB-CKD<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS SPECIAL MOTION TO STRIKE PLAINTIFFS' STRATEGIC LITIGATION AGAINST PUBLIC PARTICIPATION [CCP 425.16]**<br><br>Date: May 6, 2013<br>Time: 9:00 a.m.<br>Courtroom: 10<br>Judge: Hon. Garland E. Burrell, Jr.<br>Trial: Not set<br><br>**Jury Trial Demanded** |

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. AB Cannot Prevail on its Misappropriation of Trade Secrets Claim Because It has not Submitted Admissible Evidence of a Trade Secret ................................. 1

III. AB Failed to refute that Its Alleged Illegal Activity is Not a Trade Secret ............. 2

IV. AB has Not Submitted Admissible Evidence of Damages in Support of Its Breach of Contract or Misappropriation of Trade Secrets Claims .......................... 2

    A. Attorneys Fees in the Class Action are Not "Damages" in this Matter ........... 4

    B. Attorneys Fees Incurred in this Action are Not "Damages" ............................ 5

V. AB Cannot Prevail on Its Breach of Contract Claim Because Its Confidentiality Agreement is Unenforceable ........................................................... 6

VI. AB's Claim for Return of Personal Property is Preempted ..................................... 8

VII. This Action Arises out of James Clark's Exercise of His Constitutional Rights of Free Speech and Petition ........................................................................... 8

    A. AB Admits this Action Arises out of Mr. Clark's Exercise of Constitutionally Protected Activities It ............................................................. 8

    B. Mr. Clark did Not Engage in any Illegal Activity ........................................... 10

        1. Mr. Clark Regularly Downloaded and Printed Page 13 ....................... 10

        2. Visiting Website is Not Illegal ............................................................... 11

        3. Mr. Clark's Post-Employment Receipt of Page 13 was Not Illegal ..... 12

        4. AB did Not use Reasonable Efforts to Maintain the Secrecy of Page 13 ....................................................................................................... 13

        5. Mr. Clark did Not Commit any Illegal Act by "Instigating" the Class Action ............................................................................................ 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 583-84 (2003) .................................. 12

*Alderson v. U.S.*, 718 F. Supp. 2d 1186, 1200 (N.D. Cal. 2010) ..................................... 3, 8, 17

*Cayley v. Nunn*, 190 Cal. App. 3d 300, 303-04 (1987) .................................................. 6

*Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001) ............................................. 2, 4

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc*, 160 Cal. App. 4th 288, 297 (2008) ............................................................................................ 3

*Davis v. Air Technical Industries, Inc*, 22 Cal. 3d 1, 6 (1978) ........................................ 6

*Ferrellgas, Inc. v. American Premier Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1163 (C.D. Cal. 1999) ........................................................................................ 5

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ..................................................... 5

*Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 304-08 (2001) ............ 9, 12

*General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1169 (1994) ..................... 9, 16

*Genis v. Krasne*, 47 Cal.2d 241, 246 (1956) ................................................................ 5

*Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76-77 (1998) ...................................... 9, 17

*Hays v. Windsor*, 130 Cal. 230, 235-36 (1900) ........................................................... 6

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ......................................................... 5

*JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) . 9, 17

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009) .................................... 6

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ............................................ 10

*Lerette v. Dean Witter Organizations, Inc.*, 60 Cal. App. 3d 573, 577-78 (1976) ............... 6

*Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ........ 10

*Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) ........................................................ 2, 4

*Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ................................... 3

*Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (2006) .................................................................................................................. 4

*Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) .......................... 10

*Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007) .................................................................. 1, 4

*VSS Emultech v. Crenshaw*, 2006 WL 2411454 *5-8 (California Court of Appeal, August 22, 2006) ................................................................................................................. 17

Statutes

Cal. Civ. Code § 3426.11 ................................................................................................ 7, 14

Cal. Civ. Code § 3426.4 ....................................................................................................... 6

Cal. Civ. Code § 3426.7(b) .................................................................................................. 8

Cal. Civ. Proc. Code § 1021 ........................................................................................... 4, 5

Cal. Labor Code § 1102.5(a) ........................................................................................ 7, 14

California Civil Code section 1717 .................................................................................... 5

Civil Code section 3426.4 .................................................................................................. 5

Penal Code sections 484 or 499 ....................................................................................... 11

Rules

Eastern District Local Rule 142(a)(3) ................................................................................ 2

Eastern District Local Rules 141 & 141.1 ......................................................................... 2

Federal Rule of Civil Procedure 54(d)(2)(A) ..................................................................... 5

## I.  Introduction

Plaintiffs ANHEUSER-BUSCH COMPANIES, LLC and ANHEUSER-BUSCH, LLC ("AB") have failed to meet their burden in opposing the instant Special Motion to Strike this action as strategic litigation against public participation. It did so by wholly failing to submit admissible evidence demonstrating its probability of success on claims against Defendant JAMES ALAN CLARK's ("Mr. Clark").

Most significantly in this regard, AB completely failed to submit any admissible evidence of the existence of any trade secret. It also notably failed to refute that its allegedly illegal activities of intentionally misrepresenting the alcohol content of its products cannot be protected a trade secret.

AB also failed to submit any admissible evidence of recoverable damages while conceding that damages are an essential element of its claims against Mr. Clark.

AB failed to establish that its contract with Mr. Clark, which prohibits him and other employees from reporting any wrongdoing by AB during or after their employment, is enforceable. Those contract provisions are clearly and conspicuously contrary to California law and public policy. They accordingly are unenforceable.

Finally, AB failed to establish that this action does not arise out of Mr. Clark's exercise of his rights of free speech and petition in connection with the Class Action.

Mr. Clark respectfully requests that this Motion be granted and that AB's claims against him be struck in its entirety.

## II.  AB Cannot Prevail on its Misappropriation of Trade Secrets Claim Because It has not Submitted Admissible Evidence of a Trade Secret

AB has not produced admissible evidence of a trade secret and therefore cannot meet its burden of establishing a sufficient probability that it will prevail on its claim for misappropriation of trade secrets. *See Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007) (equating the motion to a "summary-judgment-like procedure"); *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002); *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001).

The only "evidence" submitted by AB in support of its position that "Page 13" is a trade secret is inadmissible hearsay and opinion in the form of a declaration from Kristi Skinner describing the content of "Page 13." Page 13 is not attached to the Opposition, nor is it filed under seal or pursuant to a protective order.

To the extent that document is referenced in AB's papers, Eastern District Local Rule 142(a)(3) provides that the supporting affidavits "shall . . . attach documents and exhibits offered in support of or in opposition to the motion unless such documents and exhibits are already in the record and specifically referred to in the motion or opposition."

In spite of this rule, AB failed to attach Page 13 to its Opposition to this Motion. The need for confidentiality is not an excuse for its failure. AB could have sought to have the document filed under seal or pursuant to a protective order. *See* Eastern District Local Rules 141 & 141.1.

But AB did neither of those things. Instead, it chose to rely on inadmissible hearsay and opinion evidence. As a result, AB has not met its burden of submitting admissible evidence showing a probability that it will prevail on its claim for misappropriation of trade secrets and likely on its breach of contract claim as well. This Motion should be granted in accord.

### III. AB Failed to refute that Its Alleged Illegal Activity is Not a Trade Secret

Mr. Clark previously cited authority providing that there is no trade secret protection for information about ongoing illegal activities. *See Alderson v. U.S.*, 718 F. Supp. 2d 1186, 2000 (N.D. Cal. 2010). AB failed to offer any authority to the contrary. AB has failed to establish that its alleged illegal and intentional misrepresentations of the alcohol content of its products as alleged in the Class Action were legal and therefore has failed to establish the existence of a trade secret with respect to those actions.

### IV. AB has Not Submitted Admissible Evidence of Damages in Support of Its Breach of Contract or Misappropriation of Trade Secrets Claims

AB has not established the probability it will prevail on its claims for breach of contract and misappropriation of trade secrets insofar as it has not made a prima facie showing of recoverable damages caused by Mr. Clark.

AB concedes that damages are a necessary element of both claims. With respect to its claim for breach of contract, it asserts that the "elements of a cause of action for breach of contract are . . . (4) the resulting damages to plaintiff." (Opposition at 12:7-9 citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Regarding its claim for misappropriation of trade secrets it concedes the claim "requires the plaintiff to demonstrate . . . the defendant's actions damaged the plaintiff. (Opposition at 15:17-20 citing *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc*, 160 Cal. App. 4th 288, 297 (2008)).

In spite of that acknowledgment, there is scant reference to damages in AB's Opposition. There is a brief comment relating to the breach of contract claim in which it asserts, "Anheuser-Busch has been damaged by Clark's conduct." (Opposition at 12:11-13 citing Topel Declaration ¶ 12). The cited declaration merely provides that AB has incurred more than $75,000.00 in attorney's fees in both the Class Action and instant lawsuit.

AB makes no mention at all of any damages allegedly suffered by it in connection with its misappropriation of trade secrets claim. It merely, and incorrectly, states that "Clark does not dispute that Plaintiffs suffered damages as a result of his unlawful disclosure." (Opposition at 16:11-12). Not so.

Further, this statement by AB demonstrates a fundamental misunderstanding about the respective burdens of proof by each party in this Motion. It is AB's burden to produce admissible evidence to establish a sufficient probability that it will prevail on its claims. *See Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007) (equating the motion to a "summary-judgment-like procedure"); *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002); *Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (2006); *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001).

AB has failed to meet its burden with respect to the element of damages because it has failed to establish how its attorney's fees in the Class Action or this instant case are "damages" recoverable under any of its causes of action.

### A.    Attorneys Fees in the Class Action are Not "Damages" in this Matter

AB has failed to identify any authority that would permit it to recover the attorney's fees incurred in the Class Action as damages in this matter.

Attorney fees ordinarily are not taxable as costs against the losing party; they are not directly recoverable as an element of damages (this is the so-called "American Rule"). *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Ferrellgas, Inc. v. American Premier Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1163 (C.D. Cal. 1999) ("California and other American jurisdictions follow the rule that attorneys' fees ordinarily are not recoverable as an element of damages.") *citing Genis v. Krasne*, 47 Cal.2d 241, 246 (1956)); *see also* Cal. Civ. Proc. Code § 1021.

Here, AB has failed to cite any authority that would allow it to collect as damages in this action attorney's fees incurred in the Class Action. Instead, it attempts to make an unsupported end run around the American rule regarding attorney's fees.

Even if permissible, however, those "damages" were not "caused by" Mr. Clark's alleged misappropriation of trade secrets or breach of contract. The fees incurred by AB in the Class Action result from the fact that AB is alleged o have illegally misrepresented the alcohol content of its products. They were incurred because of AB's own conduct, not as a result of the conduct of Mr. Clark.

AB's position becomes particularly problematic when cross-referenced against its own argument that this case does not "arise" out of Mr. Clark's constitutionally protected exercise of free speech and petition rights in connection with the Class Action. If this action does not arise out of Mr. Clark's protected Class Action activities, how could the fees incurred in that case be damages in the instant matter? The simple answer is that they cannot.

Finally, the litigation privilege and UTSA's express recognition of the right of "private persons to report improper activities of a private business" also preclude the possibility that

the fees incurred in the Class Action are "damages" in the instant matter. *See* Cal. Civ. Code § 47(b); Cal. Civ. Code § 3426.11; *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009); *Cayley v. Nunn*, 190 Cal. App. 3d 300, 303-04 (1987) *citing Lerette v. Dean Witter Organizations, Inc.*, 60 Cal. App. 3d 573, 577-78 (1976).

AB has not cited, nor does there appear to be, any authority that would stand for the proposition that AB would is entitled to recover attorney's fees incurred in the Class Action in the current case.

### B. Attorneys Fees Incurred in this Action are Not "Damages"

The attorney's fees AB incurs in the instant matter are not recoverable as "damages" in this case. Indeed, in the unlikely event AB were to recover attorney's fees in this action, those fees are not "damages."

"It has long been held under section 1021 that attorney's fees are not an ordinary item of actual damages." *Davis v. Air Technical Industries, Inc*, 22 Cal. 3d 1, 6 (1978); *Hays v. Windsor*, 130 Cal. 230, 235-36 (1900); *see also* Cal. Civ. Proc. Code § 1021.

Attorney fee awards can be made where a contract or statute provide for them. The contracts at issue here do not provide for attorney's fees but there are limited situations when fees may be awarded under the UTSA. AB would appear to agree because it does not request fees under California Civil Code section 1717 (regarding attorney fee awards in contract actions) but instead seeks them under the UTSA, Civil Code section 3426.4.[1]

Federal Rule of Civil Procedure 54(d)(2)(A) sets forth the procedure for recovery of attorney's fees, where permissible: "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

The UTSA provides:

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and

---

[1] AB's Prayer actually cites "Civil Code § 3246.3(c)," however, that section does not exist and Mr. Clark presumes the quote meant to cite section 3426.4, the statute that provides for the possible award of attorneys fees in misappropriation of trade secrets cases.

costs to the prevailing party. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the **prevailing party**.

Cal. Civ. Code § 3426.4 (emphasis added).

There is no substantive law applicable to this case that requires that fees be proved at trial as an element of damages. Instead, the UTSA provides only that attorney's fees may be awarded in limited circumstances to the "prevailing party," a designation that, if made at trial, would require judgment to be entered prior to the consideration of an attorney fee award. As such, any fees awardable in this case would not be a component of "damages" but would instead be awarded by motion as set forth in F.R.C.P. 54(d)(2)(A).

This Motion should be granted because AB has failed to submit admissible evidence that it has suffered any recoverable damages caused by Mr. Clark.

### V. AB Cannot Prevail on Its Breach of Contract Claim Because Its Confidentiality Agreement is Unenforceable

AB deftly avoids citation to any California authority in arguing that its confidentiality agreement is enforceable. It does so for a reason: a number of California authorities directly contradict its position.

AB relies heavily on the *Jennings* case (Eastern District of Virginia) for the proposition that an employment contract preventing the disclosure of illegal activity by a former employer is enforceable. (Opposition at 14:4-18).

But the court in *Jennings*, dealing with the issue of whistle blowing under Sarbanes-Oxley, failed to analyze numerous California authorities which contradict that proposition. As a result, it is wholly unpersuasive and unhelpful in analyzing the current case.

For example, California's whistleblower statute provides:

> An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Labor Code § 1102.5(a); see also *Alderson v. U.S.*, 718 F. Supp. 2d 1186, 1200 (N.D. Cal. 2010) (asserting that post-employment confidentiality agreements seeking to prevent a former employee from revealing harmful information about the employer's illegality are unenforceable). "This provision reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76-77 (1998).

*Jennings* is further contradicted by California's UTSA which expressly provides that, "Nothing in this section shall be construed to limit, restrict, or otherwise impair, the capacity . . . of private persons to report improper activities of a private business." Cal. Civ. Code § 3426.11.

*Fox Searchlight Pictures, Inc. v. Paladino* is also instructive insofar as it refused to interpret an employee's confidentiality agreement as prohibiting her from disclosing confidential information in the course of seeking legal advice on matters pertaining to those confidences. *See* 89 Cal. App. 4th 294, 308 (2001) (citing *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1169 (1994); *see also In re JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) (invalidating broad confidentiality agreements which precluded former employees from assisting in investigations of wrongdoings).

AB also takes the untenable position that Mr. Clark is somehow required to submit evidence of actual wrongdoing. Not so. California's whistleblower statute expressly provides that employees are protected where they have "reasonable cause to believe" that an illegal activity has occurred.[2]

AB has failed to submit evidence that Mr. Clark's disclosure of AB's allegedly illegal activity of intentionally misrepresenting the alcohol content of its products was made to

---

[2] Moreover, AB's position that it is in technical compliance with the permitted variances for beer is not the issue alleged in the Class Action. The Class Action alleges that AB intentionally dilutes the alcohol content of its beverages to always land at the bottom of the variance range and, as a result, flouts the purpose of the variance rules and defrauds its consumers to delivering a product which always has less alcohol by content than advertised. (See Plaintiff's Exhibit A at 5).

anyone other than the attorneys he sought out to prosecute the Class Action. There has been no evidence of any confidential or trade secret information escaping into the public realm or that Page 13 was disclosed publicly or to any competitor of AB. (Opposition at 16:7-9 asserting that it "remains unaware whether Clark or the Mills Law Firm disseminated copies of its beer specifications to other attorneys, or other third parties.") This opposition was AB's opportunity to submit admissible evidence in support of its position.

An employer cannot wall off an employee's ability to expose his employer's illegal activities via an unenforceable agreement which is contrary to public policy. AB cannot establish its probability of prevailing on this claim and this Motion accordingly should be granted.

## VI. AB's Claim for Return of Personal Property is Preempted

As argued in Mr. Clark's concurrent Motion to Dismiss AB's Third Cause of Action for return of personal property for failure to state a claim, this cause of action is preempted by Mr. Clark's alleged misappropriation of trade secrets. *See* Cal. Civ. Code § 3426.7(b); *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) *disapproved on other grounds in Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *see also Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011).

## VII. This Action Arises out of James Clark's Exercise of His Constitutional Rights of Free Speech and Petition

### A. AB Admits this Action Arises out of Mr. Clark's Exercise of Constitutionally Protected Activities It

This action arises out of Mr. Clark rights of free speech and petition. AB argues otherwise, asserting that the action arises out of Mr. Clark's alleged breach of contract and misappropriation of trade secrets. But its outright admission of the relationship between the cases and assertion that the attorney's fees incurred in the Class Action are "damages" in this case and betray its argument.

On April 1, 2013, AB publicly stated on its website: "We believe Clark improperly used and misrepresented our confidential information ***to instigate these lawsuits*** . . . . We will take all legal means to stop him." (Plaintiff's Exhibit G) (emphasis added).

This statement is an express admission that the current case "arises" out of Mr. Clark's constitutionally protected activities of free speech and petition exercised in connection with the Class Action. AB is pursuing Mr. Clark because he "instigat[ed] these [Class Action] lawsuits." Alone, this admission conclusively resolves the issue.

AB, however, does not stop there. It also asserts by way of its opposition to the instant Motion that the "damages" it suffered in this case includes the expenditure of more than $75,000.00 in attorney's fees in the Class Action matter. (Opposition at 12:10-12 citing Declaration of Marcus Topel ¶ 12). There would be no reason or AB to request as damages in this case the fees incurred in the Class Action unless this case arose out of Mr. Clark's constitutionally protected activities involved in instigating the Class Action.

AB, however, argues unpersuasively that this case is not subject to this Special Motion to Strike because its claims are "premised on Clark breaching his Confidentiality Agreements and misappropriating confidential and trade secret information." (Opposition at 10:18-21). Similar arguments have been expressly rejected by California courts. *See e.g. Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 304-08 (2001) (rejecting an employer's argument that its claims against a former in-house attorney were not subject to the anti-SLAPP statute because employer's claims sought to protect its confidential or privileged information allegedly unrelated to speech or petitioning where confidential information disclosed to in-house counsel's attorney); *see also 1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 583-84 (2003) (declining to deny special motion to strike as it relates to defendant's burden where defendant's alleged illegal activities were not conceded).

The chronology of events set out in Mr. Clark's moving papers, the admission from AB that is pursing Mr. Clark because he instigated the Class Action, and the offering up of the Class Action attorneys fees as "damages" in this case unequivocally demonstrate that the

current action arises out of Mr. Clark's exercise of his constitutionally protected rights of free speech and petition in connection with the Class Action.

### B.      Mr. Clark did Not Engage in any Illegal Activity

Mr. Clark's activities in instigating the Class Action were not "illegal"[3] and this case remains subject to dismissal via California's anti-SLAPP statute.

#### 1.      Mr. Clark Regularly Downloaded and Printed Page 13

AB makes much ado about the fact that Mr. Clark printed and downloaded Page 13 on May 1, 2012 and then subsequently received a copy of that document sent by Michael Azevedo. In doing so, however, AB omits several very important details which cast Mr. Clark's actions in a very different light.

First, Mr. Clark regularly accessed, downloaded, and printed Page 13 as a part of his job duties at AB. He estimates he accessed, downloaded, or printed Page 13 on hundreds of occasions. Oftentimes, he would download Page 13 and other files in preparation for AB related travel—which his last position required him to do more than fifty percent (50%+) of the time. He also frequently printed out Page 13 in order to troubleshoot particular issues. (Supplemental Declaration of James A. Clark ¶ 2).

AB itself even admits in reference to Page 13 in its opposition to the instant Motion that its "personnel **use this daily** to maintain the quality of the company's products." (Declaration of Kristi Skinner ¶ 3) (emphasis added).

Given the proper context, the fact that Mr. Clark printed out and downloaded Page 13 on May 1, 2012 is entirely unsurprising. Further, although Mr. Clark tendered his resignation five months earlier, in January 2012, and was prepared to leave at that time, he remained employed at AB's request to assist with the transition of his job duties. It was only by Mr. Clark's own goodwill toward AB that he remained in its employ at that time. (Supplemental Declaration of James A. Clark ¶ 3). Indeed, Mr. Clark was employed for more than an entire

---

[3] AB's arguments herein border on violating California Rule of Professional Conduct 5-100(A) which prohibits members from threatening to present criminal charges to obtain an advantage in a civil dispute.

month following this May 1, 2012 download and printing of Page 13.  (Declaration of James A. Clark ¶ 3).

Mr. Clark's successor requested that Mr. Clark make a copy of his files to assist in the transition on at least one occasion.  Having access to Page 13 and other trouble shooting documents on an external drive vastly improved Mr. Clark's access to those documents needed while traveling.  Mr. Clark's practice in this regard was both commonplace and encouraged by AB.  (Supplemental Declaration of James A. Clark ¶ 4).

In any event, at the time his employment with AB ended, Mr. Clark had discarded and did not possess any AB document.  (Supplemental Declaration of James A. Clark ¶ 5). Indeed, had he so possessed Page 13 at the end of his employment as AB infers, there would have been no reason for him to allegedly request it from Michael Acevedo (something he disputes in any event).

### 2. Visiting Website is Not Illegal

Mr. Clark further doesn't dispute that he visited the topclassactions.com website.  As a newly minted lawyer, he had become interested in a very recent class action matter filed on April 13, 2012 in Sacramento County involving the Cheesecake Factory and a bottle of Budweiser beer.  (Supplemental Declaration of James A. Clark ¶ 6); (Declaration of David Scroggs Exhibit C).

He also isn't surprised to see that he may have visited the Mills Law Firm's website on May 30, 2012.  At that time Mr. Clark was just days away from the end of his career at AB.  He did not have a legal job lined up and visited the websites of **many** law firms looking for potential employment opportunities.  (Supplemental Declaration of James A. Clark ¶ 7).

Given Mr. Clark's job duties and status as a newly minted lawyer looking for work, his activities in May 2012 are not particularly surprising.  But importantly, they do not evidence that he engaged in any illegal activity.

In using Page 13 within the normal course and scope of his employment, as he always had, and in visiting various law firm websites, Mr. Clark did nothing at all that constitutes a violation of any law, including Penal Code sections 484 or 499.

### 3. Mr. Clark's Post-Employment Receipt of Page 13 was Not Illegal

The communication between Michael Azevedo and Mr. Clark also fails to demonstrate any illegal activity by Mr. Clark. Mr. Azevedo was in contact with Mr. Clark after Mr. Clark's employment ended because Mr. Azevedo sought legal advice from Mr. Clark. (Supplemental Declaration of James A. Clark ¶ 8).

Mr. Clark **never** requested that Mr. Azevedo send him Page 13 or any other AB document.[4] (Supplemental Declaration of James A. Clark ¶ 8). Indeed, it is logically inconsistent to believe that Mr. Clark allegedly pilfered Page 13 from AB in advance of his department from the company only to later request the same document from Mr. Azevedo.

There was no question that Mr. Azevedo was aware of the fact that AB was intentionally misrepresenting the alcohol content advertised on its labels. Mr. Azevedo was subordinate to Mr. Clark during the time when Mr. Clark began escalating his concerns about the issue with AB's senior management. Messrs. Clark, Azevedo, and other quality assurance managers repeatedly discussed this issue. (Supplemental Declaration of James A. Clark ¶ 9).

AB's response to Mr. Clark raising concerns about this issue was that in spite of the misrepresentation, it would continue to provide less alcohol content than advertised because, strictly speaking, it was operating "within tolerances." Mr. Clark disagreed with AB's position given the fact that the U.S. Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau defined the intent of tolerances as such: "The intent of these tolerances is to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer." However, Mr. Clark was ultimately required to communicate to his subordinates AB's position. (Supplemental Declaration of James A. Clark ¶ 10).

AB's attempt to discredit Mr. Clark's internal complaints are completely without merit. AB claims MR. Clark never internally complained of its practice to intentionally misrepresent alcohol content on its labels. As shown above, this is absolutely false. The

---

[4] For purposes of this Motion, Mr. Clark acknowledges that this factual dispute must be viewed by the Court in a light most favorable to AB.

declaration of Merrily Ray, submitted by AB in its Opposition Motion, specifically provides: "Do not include matters brought to your attention through the regular performance of your job duties and that are under currently under review by Company management." (Declaration of Merrily D. Ray Exhibits A-D). Because Mr. Clark had brought this issue to the attention of AB, there was no need for him to affirmatively assert as much in the Statements of Compliance.

Mr. Clark does not dispute that a copy of Page 13 was mailed to him several months after his employment with AB ended. It was sent via U.S. First Class Mail in an anonymous blank envelope without a return mailing address. When Mr. Clark received Page 13, he was unaware of the sender's identity. (Supplemental Declaration of James A. Clark ¶ 8); (Exhibit H).

### 4. AB did Not use Reasonable Efforts to Maintain the Secrecy of Page 13

During his employment with AB, Mr. Clark observed that the company did not always use reasonable efforts to maintain the secrecy of Page 13. *See* Cal. Civ. Code § 2426.1(d). In particular, the document was readily available and frequently hanging on bulletin boards and employee work stations in AB's facilities because, as AB acknowledges, employees used it daily. Its storage in this manner put it in locations that were accessible to third parties including vendors, contractors, distributors, service personnel, tour groups, and thousands of visitors that come through AB's plants on an annual basis.[5] (Supplemental Declaration of James A. Clark ¶ 11); (Declaration of Kristi Skinner ¶ 3).

### 5. Mr. Clark did Not Commit any Illegal Act by "Instigating" the Class Action

The legality of Mr. Clark's actions in bringing the Class Action to the attorneys now prosecuting it is clear. Citing the California Supreme Court's decision in *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1169 (1994), the Court of Appeal in *Fox Searchlight*

---

[5] This issue, however, is likely a moot point as AB has not submitted admissible evidence of the existence of a trade secret in its opposition to the instant Motion. (See section II below).

*Pictures, Inc. v. Paladino* concluded that "former in-house counsel may disclose to her attorney all facts relevant to the termination, including employer confidences and privileged communications." 89 Cal. App. 4th 294, 308 (2001).

> **Our analysis of the ethical issue in this case also applies to Fox's claims based on** breach of fiduciary duty and **breach of the employment contract**. This is not a case like those cited by Fox in which the defendant utilized her former employer's customer lists or trade secrets to start a business in competition with the former employer. (See, e.g., Gordon v. Landau (1958) 49 Cal. 2d 690 [321 P.2d 456]; Robert L. Cloud & Associates, Inc. v. Mikesell (1999) 69 Cal. App. 4th 1141 [82 Cal. Rptr. 2d 143].) **We do not believe the confidentiality agreement Paladino signed can be interpreted as prohibiting her from disclosing ostensible client confidences in the course of seeking legal advice on a matter pertaining to those very confidences.**

*Id.* at 315 n.60[6] (*cited by VSS Emultech v. Crenshaw*, 2006 WL 2411454 *5-8 (California Court of Appeal, August 22, 2006) (applying Fox involving a employee confidentiality agreement and affirming order granting defendant's anti-SLAPP special motion to strike)); *see also* Cal. Labor Code § 1102.5(a) (California's Whistleblower Statute); Cal. Civ. Code § 3426.11 (California's Uniform Trade Secrets Act's provision allowing the reporting of wrongdoing); *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76-77 (1998) (enunciating a strong public policy in favor of whistleblowers); *Alderson v. U.S.*, 718 F. Supp. 2d 1186, 1200 (N.D. Cal. 2010) (holding that illegal activities are not trade secrets); *In re JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) (invalidating broad confidentiality agreements which precluded former employees from assisting in investigations of wrongdoings).

Mr. Clark's actions in bringing facts to the attention of the attorneys who are now prosecuting the Class Action were not illegal and do not prevent this Court from granting the instant Motion. For these reasons, it is clear that Mr. Clark's exercise of constitutionally protected activities of free speech and petition in connection with the Class Action were entirely legal. The anti-SLAPP motion is applicable to this case and Mr. Clark respectfully requests that this Court strike AB's unmeritorious suit.

---

[6] This case draws an important diction between when confidential information or trade secret information is used for a competing purpose as opposed to reporting wrongdoing.

Dated: April 29, 2013

                    LAW OFFICE OF ROBERT A. CARICHOFF

            By:  /s/ Robert A. Carichoff
                 ROBERT A. CARICHOFF
                 Attorney for Defendant