```
LAW OFFICE OF ROBERT A. CARICHOFF
Robert A. Carichoff (SBN 211066)
1024 Iron Point Road
Folsom, California  95630
Telephone:      (916) 357-6622
Facsimile:      (916) 673-9426
```

Attorney for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| ANHEUSER-BUSCH COMPANIES, LLC, a Delaware limited liability company, and ANHEUSER-BUSCH, LLC, a Missouri limited liability company,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES ALAN CLARK,<br><br>　　　　Defendant. | Case No.: 2:13-CV-00415-GEB-CKD<br><br>**SUPPLEMENTAL DECLARATION OF DEFENDANT JAMES A. CLARK IN SUPPORT OF HIS SPECIAL MOTION TO STRIKE PLAINTIFFS' STRATEGIC LITIGATION AGAINST PUBLIC PARTICIPATION [CCP 425.16]**<br><br>Date:  May 6, 2013<br>Time:  9:00 a.m.<br>Courtroom:  10<br>Judge: Hon. Garland E. Burrell, Jr.<br>Trial:  Not set<br><br>**Jury Trial Requested** |
|---|---|

## SUPPLEMENTAL DECLARATION OF JAMES A. CLARK

I, JAMES A. CLARK, declare:

1. I am the named Defendant in this matter. I make this declaration in support of this Motion. The below facts are within my personal knowledge and I am competent to testify to their truth if called as a witness.

2. I regularly accessed, downloaded, and printed Page 13 as a part of my job duties at AB. I estimate that I accessed, downloaded, or printed Page 13 on hundreds of occasions. Oftentimes, I would download Page 13 and other files in preparation for AB related travel—which my last position required me to do more than fifty percent (50%+) of the time. I also frequently printed out Page 13 in order to troubleshoot particular issues.

3. Although I tendered my resignation five months earlier, in January 2012, and was prepared to leave at that time, I remained employed at AB's request to assist with the transition of my job duties. It was only by my own goodwill toward AB that I remained in its employ at that time.

4. My successor requested that I make a copy of my files to assist in the transition. Having access to Page 13 and other trouble shooting documents on an external drive vastly improved my access to those documents needed while traveling. This practice in this regard was both commonplace and encouraged by AB.

5. In any event, at the time my employment with AB ended, I had discarded and did not possess any AB document.

6. I do not dispute visiting the topclassactions.com website while employed by AB. As a newly minted lawyer, I had become interested in a very recent class action matter filed on April 13, 2012 in Sacramento County involving the Cheesecake Factory and a bottle of Budweiser beer.

7. I am not surprised to see that I have visited the Mills Law Firm's website on May 30, 2012. At that time I was just days away from the end of my career at AB. I did not have a legal job lined up and visited the websites of many law firms looking for potential employment opportunities.

8. Mr. Azevedo was in contact with me after my employment ended because Mr. Azevedo was seeking out legal advice. I never requested that Mr. Azevedo send me Page 13 or any other AB document. However, I do not dispute that a copy of Page 13 was mailed to me several months after my employment with AB ended. It was sent via U.S. First Class Mail in an anonymous blank envelope without a return mailing address. When I received Page 13, I was unaware of the sender's identity.

9. There was no question that Mr. Azevedo was aware of the fact that AB was intentionally misrepresenting the alcohol content advertised on its labels. Mr. Azevedo was my subordinate during the time when I began escalating his concerns about the issue with

AB's senior management. I repeatedly discussed this issue with Mr. Azevedo and other quality assurance managers.

10. AB's response to me raising concerns about this issue was that in spite of the misrepresentation, it would continue to provide less alcohol content than advertised because, strictly speaking, it was operating "within tolerances." I disagreed with AB's position given the fact that the U.S. Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau defined the intent of tolerances as such: "The intent of these tolerances is to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer." However, I was ultimately required to communicate to my subordinates AB's position.

11. Page 13 was readily available and frequently hanging on bulletin boards and employee work stations in AB's facilities. Its storage in this manner put it in locations that were accessible to third parties including vendors, contractors, distributors, service personnel, tour groups, and thousands of visitors that come through AB's plants on an annual basis.

12. Attached hereto as Exhibit H is a true and correct copy of the envelope sent to me enclosing Page 13.

13. Attached hereto as Exhibit I is a true and correct copy of Procedure 2004-1 from the Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 29, 2013

                                       By:   /s/ James A. Clark
                                                       JAMES A. CLARK