1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                                  EASTERN DISTRICT OF CALIFORNIA

10

11   ANHEUSER-BUSCH COMPANIES,                    No.  2:13-cv-00415-TLN-CKD
     LLC, a Delaware limited liability company,
12   and ANHEUSER-BUSCH LLC, a
     Missouri limited liability company,
13                                                 **ORDER DENYING DEFENDANT'S**
                        Plaintiffs,                **MOTION TO STRIKE PLAINTIFFS'**
14                                                 **STRATEGIC LITIGATION AGAINST**
            v.                                     **PUBLIC PARTICIPATION**
15
     JAMES ALAN CLARK, an individual,
16
                        Defendant.
17

18

19          This matter is before the Court pursuant to Defendant James A. Clarke's ("Defendant")

20   Motion to Strike Plaintiffs' Strategic Litigation Against Public Participation ("SLAPP") suit.

     (ECF No. 56.)  Plaintiffs Anheuser-Busch Companies, LLC and Anheuser-Busch, LLC
21
     (collectively "Plaintiffs") filed an opposition to Defendant's motion.  (ECF No. 57.)  Defendant
22
     filed a reply to Plaintiffs' opposition.  (ECF No. 58.)  Without leave of the Court, Plaintiffs filed a
23
     Response to Defendant's Objections to Evidence in Support of his Special Motion to Strike
24
     Plaintiffs' SLAPP.[1]  (ECF No. 59.)  Having carefully reviewed the briefing filed by both parties
25
     and for the reasons stated below, Defendant's Motion to Strike Plaintiffs' SLAPP suit (ECF No.
26
     56) is hereby DENIED.
27

     _____
28   [1]      In ruling on the instant motion, the Court does not take into consideration Plaintiffs Response because it was
     filed without leave of Court. (ECF No. 59.)

                                                      1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that Defendant worked at Anheuser-Busch "from or about" November 2, 1998 until June 9, 2012.  (Compl., ECF No. 1 ¶ 2.)  Plaintiffs allege that during Defendant's time at Anheuser-Bush, Defendant had access to the company's confidential, proprietary, and/or trade secret information and documents.  (ECF No. 1 ¶ 2.)  Plaintiffs allege that Defendant signed an "Employee Agreement As To Intellectual Property and Confidentiality" ("Confidentiality Agreements") on two separate occasions.  (ECF No. 1 ¶ 14.)  The Confidentiality Agreements provide that, upon termination of his employment from Anheuser-Busch, Defendant would return all Anheuser-Busch confidential information and would not make or keep copies, and would not disclose any Anheuser-Busch confidential, proprietary, and/or trade secret information to anyone.  (ECF No. 1 ¶ 4.)  The Confidentiality Agreements also required Defendant, upon request, to certify under oath in writing that he had not disclosed or used, in any way any confidential information following termination of his employment with the company.  (ECF No. 1 ¶ 4.)

Plaintiffs allege that Defendant took a document that contains a wide range of confidential and trade secret information[2] and failed to return the confidential information upon the termination of his employment.  (ECF No. 1 ¶ 21.)  Plaintiffs further allege that Defendant wrongfully used, disseminated, and disclosed Anheuser-Busch's confidential and trade secret information.  (ECF No. 1 ¶ 27.)  Plaintiffs allege that Defendant's acts violated his contractual and legal obligations to Anheuser-Busch, as well as his duty of loyalty.  (ECF No. 1 ¶ 21.)

On February 8, 2013, Plaintiffs invoked Defendant's Confidentiality Agreements, and requested Defendant provide a written certification under oath that he had not used or disclosed in any way, any confidential information learned or obtained during his employment.  (ECF No. 1 ¶ 22.)  On February 19, 2013, Plaintiffs allege that Defendant replied by letter refusing to provide the written certification required by the Confidentiality Agreements.  (ECF No. 1 ¶ 23.)  Plaintiffs allege that Defendant only denied providing any Anheuser-Busch competitor, vendor, or supplier with any trade secret or confidential information since the end of his employment with the company.  (ECF No. 1 ¶ 23.)  Plaintiffs allege that Defendant has not provided any written

---

[2]      This document is referred to internally at Anheuser-Busch as "Page 13."

1   certifications under oath that he has not disclosed or used any confidential information belonging

2   to the company.

3            On February 22, 2013, various consumers from multiple states filed a class action suit

4   against Plaintiffs, alleging that Plaintiffs intentionally overstate the alcohol content of many of

5   their malt beverages on their labels.  *In re Anheuser-Busch Beer Labeling Mktg. & Sales*

6   *Practices Litig.*, 644 F. App'x 515, 515–16 (6th Cir. 2016).  On March 1, 2013, Plaintiffs filed

7   the Complaint in the instant action against Defendant in the United States District Court, Eastern

8   District of California alleging breach of contract, misappropriation of trade secrets, and return of

9   personal property.  (ECF No. 1.)  Defendant filed a motion to dismiss and the instant motion to

10  strike the Complaint under the California anti-SLAPP statute.  Defendant argues that Plaintiffs'

11  claims "attempt to punish [Defendant] for exercising his constitutional rights of petition and free

12  speech in connection with class action litigation filed against [Plaintiffs by Defendant] exactly

13  one week prior to this action."  (ECF Nos. 12, 14 at 1.)

14           On July 18, 2013, the district court dismissed Plaintiffs' claim for return of personal

15  property and denied Defendant's anti-SLAPP motion, holding that Plaintiffs' claims did not arise

16  out of Defendant's protected litigation activity. [3] The court did not address whether Plaintiffs

17  established a probability of prevailing on their claims challenged by the anti-SLAPP motion.

18  Defendant filed an interlocutory appeal of the court's order.  (ECF No. 36.)

19           On November 13, 2015, the United States Court of Appeals for the Ninth Circuit reversed

20  the district court and reasoned that Plaintiffs' suit against Defendant arises out of his

21  constitutionally protected pre-litigation activity, and therefore Defendant satisfied the first prong

22  of the anti-SLAPP motion.  *Anheuser-Busch Companies, LLC v. Clark*, 622 F. App'x 671, 672

23  (9th Cir. 2015).  The Ninth Circuit vacated the order denying the anti-SLAPP motion and

24  remanded so that the court could consider in the first instance whether Plaintiffs can establish a

25  probability that they will prevail on their claims against Defendant under the second prong of the

26  anti-SLAPP statute.  *Id.*

27  _____

28  [3]        This matter was initially assigned to the Honorable Garland E. Burrell, Jr.  (ECF No. 5.)  On January 8,
    2016, this matter was reassigned to the instant Court for all further proceedings.  (ECF No. 50.)

## II.      STANDARD OF REVIEW

A SLAPP suit is a civil lawsuit aimed at preventing citizens from exercising their political rights or punishing those who have done so.  *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 21 (2010).  "SLAPP suits masquerade as ordinary lawsuits," but "are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant." *Id.* (quotation omitted*); accord Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009).  California enacted the anti-SLAPP statute to vindicate free speech and petition for rights due to concern over "a disturbing increase" in such suits.  Cal. Civ. Proc. Code § 425.16; *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 815 n.1 (2011). The purpose of the anti-SLAPP statute is to prevent meritless litigation designed to chill the exercise of First Amendment rights.  *Makaeff v. Trump University*, 715 F.3d 254, 261–62 (9th Cir. 2013).  Under the statute, a defendant subjected to a SLAPP suit may file a special motion to strike in state or federal court to expedite the early dismissal of the plaintiff's unmeritorious SLAPP claims.  *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010); *Simpson Strong-Tie Co.*, 49 Cal. 4th at 21.

The anti-SLAPP statute posits a two-step process for determining whether an action is a SLAPP action and subject to a special motion to strike.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from a protected activity.  *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).  In order to satisfy the first prong, a defendant must simply demonstrate that he engaged in "protected activity" and that each of the plaintiffs' claims against him "arises from" that protected activity.  *Id.*  If the court finds that the defendant has made such a showing, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.  *Id.*

In order to establish the requisite probability of prevailing, the plaintiff need only have "stated and substantiated a legally sufficient claim.  *Id.* (quoting *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1123 (1999)).  The plaintiffs must demonstrate that the complaint is supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  *Makaeff*, 715 F.3d at 261; *Batzel*

4

*v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).  The anti-SLAPP statute "poses no obstacle to suits that possess minimal merit."  *Navellier*, 29 Cal. 4th at 93.  Once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff has established that its cause of action has some merit and the entire cause of action stands.  *Oasis*, 51 Cal. 4th at 815.

### III.    ANALYSIS

For each of Plaintiffs' causes of action, the Court proceeds to determine whether Plaintiffs can establish a probability that they will prevail on their claims against Defendant under the second prong of the anti-SLAPP statute.  To prevail on an anti-SLAPP motion, the moving defendant must first make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional rights to petition and to free speech.  *Makaeff*, 715 F.3d at 261.  If the court finds that such a showing has been made, the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim.  Cal. Civ. Proc. Code § 425.16(b)(1); *Makaeff*, 715 F.3d at 261.  Because the Ninth Circuit found that Defendant satisfied the first prong of the anti-SLAPP motion, the Court focuses its analysis on the second prong, whether Plaintiffs can establish a probability that they will prevail on their claims against Defendant.

A.  Misappropriation of a Trade Secret

Plaintiffs allege that Defendant's actions constitute willful misappropriation of trade secrets under California's Uniform Trade Secret Act ("UTSA").  A claim for misappropriation of trade secrets under UTSA requires the plaintiff demonstrate: (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and (3) the defendant's actions damaged the plaintiff.  Cal. Civ. Code § 3426.1; *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2d Dist. 2008).  "A '[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1.

*i.      Consideration of declaration of Kristi Skinner*

As a preliminary matter, Defendant argues that Plaintiffs rely on inadmissible hearsay in the form of a declaration to support its position that Page 13 constitutes a trade secret.    However, Defendant fails to cite any authority to show that submitting a declaration attesting to the trade secret nature of the document in question is impermissible.  For purposes of an anti-SLAPP motion, courts consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Pro. § 425.16, subd. (b)(2).  Courts may also consider declarations supporting or opposing an anti-SLAPP motion so long as they are based on personal knowledge and executed under penalty of perjury.  *See Sweetwater Union High School Dist. v. Gilbane Building Co.*, 245 Cal. App. 4th 19, 33 n.12 (Cal. Ct. App. 4th Dist. 2016) *review granted and opinion superseded*, 371 P.3d 223 (Cal. 2016); *see Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1372 (Cal. Ct. App. 4th Dist. 2016); *see also Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (Cal. Ct. App. 3d Dist. 2007).  "Declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded."  *Sykes*, 147 Cal. App. 4th at 26; *see Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1238 (Cal. Ct. App. 4th Dist. 2003) (rejecting a declaration "supported only by information and belief or his mere understanding of events").

Plaintiffs refer to the allegedly misappropriated trade secrets in a declaration submitted under penalty of perjury by Kristi Skinner, the Anheuser-Busch employee allegedly responsible for maintaining the confidential Anheuser-Busch document known as Page 13.  (ECF No. 21.)  According to her declaration, Skinner has worked at Anheuser-Busch since 1986 and serves as a "Subject Matter Expert I – Technical in Quality Assurance, Zone Brewery Support department, Supply division."  (ECF No. 21 ¶ 2.)  Skinner states she is also the "custodian" of Page 13 and "the only person that can edit or grant access" to the document.  (ECF No. 21 ¶ 2.)

Given her 30-plus years of work experience with Anheuser-Busch, and her specific duty as a "Subject Matter Expert" to exclusively oversee the Page 13 document, Skinner establishes that her statements are supported by more than her mere understanding of the document.  The

1    declaration gives a detailed description of Page 13 and how it connects to Skinner's job duties.

2    As "custodian" of the document, Skinner's responsibility over Page 13 would require personal

3    knowledge about the document as well.  Thus, Skinner's statements were based on her own

4    personal knowledge of the matters, and do not constitute inadmissible hearsay.  (ECF No. 21 ¶ 1.)

5    Therefore, the Court can consider her declaration to determine whether Page 13 constitutes a

6    trade secret.

7                        *ii.*        *Identification of a trade secret*

8            "It is critical to any [UTSA] cause of action — and any defense — that the information

9    claimed to have been misappropriated be clearly identified."  *Silvaco Data Sys. v. Intel Corp.*, 184

10   Cal. App. 4th 210, 221 (Cal. Ct. App. 6th Dist. 2010), *disapproved on other grounds by Kwikset*

11   *Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).  A plaintiff must describe the trade secret "with

12   sufficient particularity to separate it from matters of general knowledge in the trade or of special

13   knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain

14   at least the boundaries within which the secret lies."  *Altavion, Inc. v. Konica Minolta Sys. Lab.*

15   *Inc.*, 226 Cal. App. 4th 26, 43–44 (Cal. Ct. App. 1st Dist. 2014) (quoting *Diodes, Inc. v. Franzen*,

16   260 Cal. App. 2d 244, 253 (Cal. Ct. App. 2d Dist. 1968)).  The rule requiring a plaintiff to

17   describe its trade secrets discourages the filing of meritless claims, prevents parties from using the

18   discovery process to uncover trade secrets, assists the trial court in framing the scope of

19   discovery, and "enables defendants to form complete and well-reasoned defenses, ensuring that

20   they need not wait until the eve of trial to effectively defend against charges."  *Computer Econ.,*

21   *Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).

22           Defendant contends that Plaintiffs fail to identify with reasonable particularity the trade

23   secrets allegedly misappropriated.  (ECF No. 58 at 7.)  "Reasonable particularity" does not mean

24   that the party alleging misappropriation has to define every minute detail of its claimed trade

25   secret.  *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005).

26   In the instant case, Plaintiffs refer to the allegedly misappropriated trade secrets in Skinner's

27   declaration.  (ECF No. 21.)  According to Skinner, this document:

28               "[C]ontains  a  wide  variety  of  confidential  information  related  to

                                              7

> [Plaintiffs'] brewing processes, including but not limited to, information regarding a variety of analytical characteristics for each of [Plaintiffs'] products…[t]his document is absolutely critical to [Plaintiffs'] brewing operations, and the information it contains would be extremely valuable to its competitors.   [Plaintiffs] consider this document, as well as the detailed brewing recipe specifications it contains, to be highly confidential, proprietary, trade secret information."

(ECF No. 21 ¶ 3.)  An averment simply that the plaintiff has a "secret process" is a bare legal conclusion.  *Franzen*, 260 Cal. App. 2d at 252 (finding that the subject matter of plaintiff's "so called 'secret process' is not stated, except to hint that it had something to do with the manufacture.")  Here, Skinner makes more than a bare legal conclusion that Page 13 is a trade secret.  She describes with reasonable particularity how the information in Page 13 specifically relates to Anheuser-Busch's brewing processes, which may include specific formulas and techniques that are not generally known to the public or the company's competitors.  (ECF No. 21 ¶ 3.)  Plaintiffs claim that Anheuser-Busch spends much time, money, and effort, to develop these distinctive and proprietary techniques and innovations.  (ECF No. 1 ¶ 12.)  Because Skinner identifies and details aspects of the document with reasonable particularity to separate it from matters of general knowledge, Plaintiffs adequately identify a trade secret.

To establish that Page 13 constitutes a trade secret, Plaintiffs must also show that it is "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy."  Cal. Civ. Code § 3426.1(d).  Skinner's declaration also contains statements demonstrating reasonable efforts to maintain the document's secrecy.  (ECF No. 21.)  Skinner affirms that her duties "as the sole custodian of the Page 13 document" consist of reviewing and assessing each employee's request for the document, and granting access only "to a limited security group."  (ECF No. 21 ¶ 4.)  She declares that Page 13 is not intended to be disseminated to anyone outside of the company's security group.  (ECF No. 21 ¶ 4.)  Skinner's declaration reasonably identifies Page 13 as a secret and demonstrates efforts by Anheuser-Busch to maintain the document's secrecy.  Therefore, Plaintiffs establish a prima facie showing that Page 13 constitutes a trade secret pursuant to California Code of Civil Procedure § 2019.210.

Defendant also submitted a declaration which argues that Plaintiffs did not use reasonable

8

1   efforts to maintain the secrecy of Page 13 because "the document was readily available and

2   frequently hanging on bulletin boards and employee work stations in [Plaintiffs'] facilities."

3   (ECF No. 58 at 5.)  However, in deciding the question of the potential merit of claims challenged

4   by an anti-SLAPP motion, courts may consider the defendant's evidence, but the "court does not,

5   however, weigh that evidence against the plaintiff's, in terms of either credibility or

6   persuasiveness. Rather the defendant's evidence is considered with a view toward whether it

7   defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence

8   of a necessary element." *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 584 (Cal. Ct.

9   App. 2d Dist. 2003).  In the analysis of the second prong, the Court accepts as true all evidence

10  favorable to the plaintiff and assesses the defendant's evidence only to determine if it defeats the

11  plaintiff's submission as a matter of law.  *City of Colton v. Singletary*, 206 Cal. App. 4th 751, 769

12  (Cal. Ct. App. 4th Dist. 2012) (citing *Oasis*, 51 Cal. 4th at 820).  In the instant case, Defendant's

13  argument as to the reasonable efforts taken to maintain the secrecy of Page 13 is ultimately

14  immaterial as the Court will not weigh or determine credibility of Defendant's competing

15  evidence.  Therefore, Plaintiffs present enough information that identifies a trade secret with

16  reasonable particularity to separate it from matters of general knowledge.

17              iii.     *The acquisition, disclosure, or use of a trade secret through improper*
                        *means*

18          A claim for misappropriation of trade secrets under UTSA requires the plaintiff to

19  demonstrate the defendant acquired, disclosed, or used the plaintiff's trade secret through

20  improper means.  Code Civ. Proc., § 2019.210.  UTSA defines "misappropriation" as an

21  "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the

22  trade secret was acquired by improper means." Cal. Civ. Code § 3426.1(b)(1).  "'Improper

23  means'" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to

24  maintain secrecy, or espionage through electronic or other means."  Cal. Civ. Code § 3426.1(a).

25          In the instant case, Plaintiffs allege that months after his resignation, Defendant contacted

26  Michael Azevedo, an Anheuser-Busch employee, and requested Azevedo send him another copy

27  of Page 13.  (ECF No. 57 at 4.)  According to Azevedo's declaration, in response to Defendant's

28

1   request, Azevedo accessed Page 13 and sent a copy of it to Defendant without the authorization of

2   a supervisor or any other person at Anheuser-Busch.  (ECF No. 24 ¶ 3.)  Azevedo also understood

3   that "sending the Page Thirteen to [Defendant] involved sending confidential information to a

4   person not employed by the company."  (ECF No. 24 ¶ 5.)  The parties do not dispute that

5   Defendant downloaded and retained company documents and information after his resignation.

6   Nor do they dispute that Defendant disclosed these documents and information, including Page

7   13, to third parties to further the class action litigation brought against Plaintiffs.

8          Furthermore, Defendant improperly acquired the document by virtue of his former status

9   as an Anheuser-Busch employee, and by inducing a current Anheuser-Busch employee to take

10   such information.  Because improper means of acquiring a trade secret includes misrepresentation

11   and breach or inducement of a breach of a duty to maintain secrecy, Defendant's actions taken

12   without the authorization of a supervisor or any other person at Anheuser-Busch constitutes

13   improper conduct.  Defendant also improperly disclosed and used Anheuser-Busch documents

14   and information without Plaintiffs' consent, knowing that his disclosure and use of such

15   confidential information gave rise to a duty not to unduly disclose it.  Thus, Plaintiffs have made

16   a prima facie showing that the element of misappropriation is satisfied.

17                    *iv.    Defendant's actions damaged Plaintiff*

18          Defendant contends that Plaintiffs failed to submit evidence that they suffered any

19   damages as a result of Defendant's alleged breach.  (ECF No. 58 at 6.)  Defendant argues that

20   Plaintiffs make "no mention at all of any damages allegedly suffered by it in connection with its

21   misappropriation of trade secrets claim."  (ECF No. 58 at 6.)  Plaintiffs maintain that they

22   "suffered and continue to suffer irreparable harm and injury" as a direct and proximate result of

23   Defendant's conduct.  (ECF No 1 ¶ 36.)

24          A claim for misappropriation of trade secrets under UTSA requires the plaintiff

25   demonstrate that the defendant's actions damaged the plaintiff.  *CytoDyn*, 160 Cal. App. 4th at

26   297.  A defendant may damage a plaintiff by causing them to suffer economic injury and/or

27   irreparable harm, such as loss of goodwill or a damaged reputation.  *See Rent-A-Ctr., Inc. v.*

28   *Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (holding that

1    evidence of threatened loss of prospective customers or goodwill supports a finding of irreparable

2    harm). In the instant case, in addition to seeking compensatory and punitive damages, Plaintiffs

3    also seek injunctive relief.  (ECF No. 1 ¶ 48–49.)  Plaintiffs allege that Defendant's

4    misappropriation "is causing and will cause irreparable harm to Anheuser-Busch unless and until

5    it is enjoined by the Court."  (ECF No 1 ¶ 36.)  Plaintiffs claim they suffered the loss of

6    intellectual property as well as potential loss of current and future business and sales.  (ECF No. 1

7    ¶ 36.)  Plaintiffs also allege that Defendant's actions caused actual damages to Plaintiffs,

8    including the value of the company's trade secret information, and legal expenses incurred as a

9    foreseeable consequence of Defendant's breach of his contractual obligations not to improperly

10   disclose or use Anheuser-Busch's trade secret information.  (ECF No 1 ¶ 38.)  Here, Plaintiffs

11   state and substantiate a legally sufficient claim that Defendant's actions caused them actual

12   damage.  *See Animal Blood Bank, Inc. v. Hale*, No. 2:10-CV-02080 KJM, 2012 WL 5868004, at

13   *7 (E.D. Cal. 2012) (finding that defendant's actions caused actual damages to plaintiffs,

14   including causing plaintiffs to no longer be the "primary supplier" of blood to some of its clients).

15        Accordingly, Plaintiffs plead factual allegations to support their claim against Defendant

16   for misappropriation of Anheuser-Busch's trade secrets.  Plaintiffs allege that they possessed a

17   document detailing the company's brewing operations, and other information that would be

18   extremely valuable to its competitors, that amounted to a trade secret. (ECF No. 1 ¶¶ 32–33.)

19   Plaintiffs also allege that Defendant took this document and turned it over to third parties in order

20   to further the class action litigation brought against Plaintiffs.  (ECF No. 21.)  Plaintiffs allege

21   that Defendant's actions caused actual damages to Plaintiffs, including the loss of intellectual

22   property, current and future sales, and legal expenses. (ECF No 1 ¶ 36–38.)  Accordingly,

23   Plaintiffs have demonstrated that they owned a trade secret, Defendant acquired, disclosed, or

24   used the trade secret through improper means, and Defendant's actions caused them damage in

25   the form of economic loss and reputation.  For these reasons, the Court finds that Plaintiffs have

26   demonstrated a likelihood of prevailing on their UTSA cause of action.

27        B.  Breach of Contract

28        Plaintiffs contend that Defendant breached his obligations under the Confidentiality

11

Agreements.  (ECF No. 1 ¶ 27.)  The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff.  *Oasis*, 51 Cal. 4th at 821 (2011).

With respect to the first element — the existence of a contract — Plaintiffs' complaint identifies the existence of a contract, namely the Confidentiality Agreements, and outlines Defendant's obligations under them. Clause Number 6 of the Confidentiality Agreements states:

> "All tangible property in my custody…containing any Confidential Information…shall not be copied or removed from the premises of the Company…and shall be delivered to the Company without keeping any copies or any portions thereof on the termination of my employment." (ECF No. 1 ¶ 15.)

Clause Number 7 of the Confidentiality Agreements imposes the obligation on Defendant to certify compliance with the Confidentiality Agreements:

> "Unless the Company consents or directs me otherwise in writing, I will not at any time during or after my employment with the Company use any Confidential Information for my own benefit or disclose any Confidential Information to anyone outside the Company…In addition, for a period of three (3) years following the termination of my employment with the Company and upon its request, I will certify under oath in writing that I have not disclosed or used in any way any Confidential Information."

(ECF No. 1 ¶ 16.)  Therefore Plaintiffs identify the existence of a contract, and satisfy the first element for breach of contract.

Neither party disputes Plaintiffs performance of duty under the Confidentiality Agreements.  Therefore, the Court does not address the second element.

As to the third element — Defendant's breach — Plaintiffs assert that Defendant breached the Confidentiality Agreements in a number of ways.  Plaintiffs allege that Defendant acquired information belonging to Plaintiffs without their knowledge or authorization, and for reasons unrelated to Defendant's performance of duties as an employee.  (ECF No. 1 ¶ 21.)  Defendant also failed to return Plaintiffs' confidential information upon the termination of his employment, and wrongfully used, disseminated, and disclosed Plaintiffs' confidential information.  (ECF No. 1 ¶ 27.)  Plaintiffs further assert that Defendant's refusal to certify, under oath and in writing, that

1  he has not disclosed or used confidential information learned or obtained during his employment

2  also constitutes a breach of contract.  (ECF No. 1 ¶ 27.)

3       Defendant does not contend that he did not sign the Confidentiality Agreements.  Nor

4  does Defendant deny that he used and disclosed such information to instigate the class action

5  litigation against Plaintiffs.  Defendant only argues that the Confidentiality Agreements are

6  unlawful and unenforceable.  Although Defendant does not offer direct evidence that he did not

7  breach the Confidentiality Agreements, the proper inquiry in the context of an anti-SLAPP

8  motion "is whether the plaintiff proffers sufficient evidence for such an inference."  *Oasis*, 51

9  Cal. 4th at 822.

10       Here, Plaintiffs proffer sufficient evidence to infer that Defendant breached his contract by

11  misappropriating company information in violation of his obligations under the Confidentiality

12  Agreements.  According to the Complaint, Defendant accessed and downloaded an Anheuser-

13  Busch confidential or trade secret document from his work computer one month before resigning

14  from Anheuser-Busch. (ECF No. 1 ¶ 21.)  Plaintiffs also proffer evidence to show that, after his

15  resignation, Defendant contacted a current Anheuser-Busch employee to obtain another copy of

16  Page 13.  (ECF No. 57 at 4.)  This employee then accessed the document, and sent a copy of it to

17  Defendant without the authorization of a supervisor or any other person at Anheuser-Busch.

18  (ECF No. 24.)  Such actions would constitute a breach of Clause 6 of the Confidentiality

19  Agreements, which prohibits the removal of confidential information from the company's

20  premises.  (ECF No. 1 ¶ 15.)

21       Plaintiffs also demonstrate that the Confidentiality Agreements require Defendant, upon

22  request, to certify under oath in writing that he had not disclosed or used any confidential

23  information following termination of his employment with the company.  Plaintiffs allege that

24  they invoked the certification provision of the Confidentiality Agreements, but Defendant has

25  failed to comply, thus breaching his obligations under the Confidentiality Agreements.  (ECF No.

26  1 ¶ 22–23.)  Therefore, Plaintiffs proffer sufficient evidence for the Court to infer that Defendant

27  breached his contract.

28       With regards to the fourth element — resulting damages to Plaintiff — Plaintiffs allege

13

1   that they suffered damages as a result of Defendant's actions.  Plaintiffs claim that it has incurred

2   over $75,000 in legal fees and actual damages because of Defendant's overt acts in using

3   confidential information to instigate the class action lawsuits, the investigation and prosecution of

4   the class action litigation and this instant action. (ECF No. 25 ¶ 12.)  Based on this showing and

5   the inferences therefrom, the Court concludes that Plaintiffs have demonstrated a likelihood of

6   prevailing on its breach of contract claim.

7           C.   Plaintiffs Must Overcome Defendant's Substantive Legal Defenses

8           Plaintiffs must also present admissible evidence to show a "probability of success on the

9   merits" to defeat any privilege or legal defenses raised by the defendant.  *Wilson v. Parker,*

10  *Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (if the anti-SLAPP motion is denied in prong

11  two, then the "trial court necessarily concludes that the plaintiff has substantiated a legally tenable

12  claim through a factually sufficient showing and that the defendant's contrary showing, if any,

13  does not defeat the plaintiff's as a matter of law"); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118

14  Cal. App. 4th 392, 398 (Cal. Ct. App. 4th Dist. 2004) (The anti-SLAPP statute "contemplates

15  consideration of the substantive merits of the plaintiff's complaint, as well as all available

16  defenses to it, including, but not limited to constitutional defenses.").  In the instant case,

17  Defendant argues that, as a matter of law, Plaintiffs cannot establish the probability that they will

18  prevail on their claims for two reasons: (1) the Confidentiality Agreements are invalid and thus

19  unenforceable; and (2) their claims are barred by the litigation privilege.

20                  *i.    Confidentiality Agreements*

21          Defendant argues that Plaintiffs cannot prevail on their breach of contract claim because

22  "the underlying contracts are unlawful and thus unenforceable."  (ECF No. 56 at 9.)  Defendant

23  contends that the Confidentiality Agreements are unenforceable as a matter of public policy to the

24  extent that Plaintiffs seek to use it to suppress evidence of illegal actions.  (ECF No. 56 at 9.)

25  Defendant argues that "[Plaintffs'] unilateral employment agreements prohibit current or former

26  employees from disclosing *anything at all* regarding their employment, including evidence of

27  ongoing fraud or illegality."  (ECF No. 56 at 10 (emphasis in original).)  Plaintiffs contend that

28  Defendant's assertion that confidentiality agreements are unenforceable as a matter of public

14

1   policy is without merit.  (ECF No. 57 at 16.)

2        Defendant cites two cases in support of his position that the Confidentiality Agreements

3   are unenforceable: *Alderson v. United States*, 718 F. Supp. 2d 1186 (C.D. Cal. 2010), *aff'd*, 686

4   F.3d 791 (9th Cir. 2012) and *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294

5   (Cal. Ct. App. 2d Dist. 2001).  However, *Alderson* does not involve a former employee who

6   misappropriated confidential documents.  *Alderson*, 718 F. Supp. 2d at 1200 (holding that

7   taxpayer's False Claims Act qui tam award in Medicare fraud case was not entitled to capital

8   gains treatment under Internal Revenue Code, but rather, was treatable as ordinary income).

9   Defendant also incorrectly relies on *Paladino*, which addresses "the narrow issue of whether a

10  former in-house counsel suing her employer for wrongful termination may divulge to her own

11  attorney employer confidences obtained during the course of her employment."  *Paladino*, 89

12  Cal. App. 4th at 308.  Both cases simply do not announce a sweeping rule that renders

13  confidentiality agreements unenforceable such that former employees may disclose confidential

14  information or trade secrets.

15       Defendant also claims to have immunity and protection under California's whistleblower

16  statutes.  Plaintiffs contend that an employee's breach of a confidentiality agreement is not

17  excused pursuant to California public policy just because the employee claimed to be acting as a

18  whistleblower.  (ECF No. 57 at 17.)  California provides special protections to employees who

19  come forward of their own initiative to report illegal actions by their employers in certain

20  situations.  Cal. Lab. Code § 1102.5 ("An employer, or any person acting on behalf of the

21  employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an

22  employee from disclosing information to a government or law enforcement agency… if the

23  employee has reasonable cause to believe that the information discloses a violation of state or

24  federal statute").  Under California's whistleblower statute, an employee engages in protected

25  activity when he "discloses to a *governmental agency* reasonably based suspicions of illegal

26  activity."  *Jadwin v. Cty. Of Kern*, 610 F. Supp. 2d 1129, 1153 (E.D. Cal. 2009) (emphasis added)

27  (citing *Mokler v. Cty. Of Orange*, 157 Cal. App. 4th 121, 138 (Cal. Ct. App. 4th Dist. 2007)).

28  Only complaints or reports made to a governmental agency are protected.  *See Robles v.*

1    *Agreserves, Inc.*, 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016) (employee's conduct in making

2    internal reports, rather than reports to government agencies, was not protected activity for

3    purposes of his whistleblower retaliation claim under California law). Here, Defendant disclosed

4    information to attorneys in order to further the class action litigation against Plaintiffs. Because

5    Defendant did not report his suspicions to a governmental agency, he did not engage in a

6    protected activity under California Labor Code § 1102.5. Thus, Defendant was not protected by

7    California's whistleblower statute.

8                                    ii.     *Litigation Privilege*

9           Defendant asserts that acts taken "in furtherance of" a protected activity bar Plaintiffs'

10   claims for breach of contract and misappropriation of trade secrets. On appeal, the Ninth Circuit

11   held that "[Plaintiffs'] papers make clear that it sued [Defendant] for acquiring and sharing

12   information with putative class counsel to further the class action . . . [Plaintiffs have] therefore

13   sued [Defendant] for acts taken 'in furtherance of' a protected activity.'" *Anheuser-Busch*

14   *Companies, LLC v. Clark*, 622 F. App'x 671 (9th Cir. 2015). Defendant argues that this privilege

15   is absolute and specifically bars claims for breach of contract and misappropriation of trade

16   secrets. (ECF No. 56 at 8–9.) Plaintiffs argue that in similar situations, where an employee

17   misappropriates documents in anticipation of litigation, numerous courts have held that there is

18   no privilege or protection from civil claims brought by their former employer. (ECF No. 57 at

19   12.)

20          Preparation for litigation is a protected activity. *Kolar v. Donahue, McIntosh &*

21   *Hammerton*, 145 Cal. App. 4th 1532, (2006); *Graham-Sult v. Clainos*, 756 F.3d 724, 738 (9th

22   Cir. 2013). However, the California Supreme Court concluded that such communications are

23   "not protected under the anti-SLAPP statute because the litigation privilege and the anti-SLAPP

24   statute are substantively different statutes that serve quite different purposes, and it is not

25   consistent with the language or the purpose of the anti-SLAPP statute to protect such threats."

26   *Flatley v. Mauro*, 39 Cal. 4th 299, 322 (2006). The privilege also does not protect illegal conduct

27   that results in damages. *Scalzo v. Baker*, 185 Cal. App. 4th 91, 100 (Cal. Ct. App. 2d Dist.

28   2010)(holding that wrongful potentially criminal activity does not create absolute immunity under

1   the litigation privilege); *see also Kimmel v. Goland*, 51 Cal. 3d 202, 209 (1990) (rejecting the

2   application of the privilege where defendants obtained information for litigation by secretly tape

3   recording conversations, allegedly violating a criminal statute protecting against invasion of

4   privacy).  In the narrow circumstance, where either the defendant concedes the illegality of its

5   conduct or the illegality is conclusively shown by the evidence, the courts must deny the anti-

6   SLAPP motion.  *Flatley*, 39 Cal. 4 at 316.  If a factual dispute exists about the legality of the

7   defendant's conduct, the plaintiff must raise the problem in connection with its burden to show a

8   probability of prevailing on the merits.  *Id.*  "Even if the asserted illegality were not clear on its

9   face, that fact would allow the motion to survive the required analysis under the first prong, but

10  would not mean that the method of obtaining the information is irrelevant to the second prong

11  analysis."  *Scalzo*, 185 Cal. App. 4th at 100.

12          Plaintiffs allege that Defendant's misappropriation of confidential and trade secret

13  information, and use of it for his own personal gain violated numerous provisions of the

14  California Penal Code.  A person commits theft if they "fraudulently appropriate property which

15  has been entrusted to him or her," or "knowingly and designedly, by any false or fraudulent

16  representation or pretense, defraud any other person of . . . personal property."  Cal. Penal Code §

17  484.  A person is also guilty of theft if they steal, take, carry away, or use without authorization, a

18  trade secret.  Cal. Penal Code § 499c(b)(1).  In addition, a person who fraudulently appropriates

19  any article representing a trade secret entrusted to him commits theft.  Cal. Penal Code §

20  499c(b)(2).  Based on Plaintiffs' allegations, and statements made by Defendant, there is

21  sufficient evidence to show that Defendant illegally misappropriated, used, and disseminated

22  confidential information entrusted to him.  Such behavior constitutes theft under multiple

23  provisions of the California Penal Code, and thus precludes Defendant from invoking the

24  litigation privilege to protect his illegal conduct.

25          In light of these facts, Defendant has failed to establish that Plaintiffs cannot succeed on

26  their claims as a matter of law.  Furthermore, Plaintiffs' evidentiary support sufficiently

27  establishes the requisite prima facie showing of a likelihood of success on their claims.

28  ///

1

IV.     **CONCLUSION**

2

      For the above stated reasons, Defendant's Motion to Strike Plaintiffs' Strategic Litigation

3

Against Public Participation (ECF No. 56) is hereby **DENIED**.  The parties are hereby ordered to

4

file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed

5

to trial.

6

      IT IS SO ORDERED.

7

8

Dated: March 23, 2017

9

_____

10

Troy L. Nunley
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28